# STATE OF MICHIGAN

# COURT OF APPEALS

In re LETTS, Minors.

UNPUBLISHED
April 19, 2018

Nos. 337432; 338755
Ingham Circuit Court
Family Division
LC Nos. 15-001269-NA;
          15-001270-NA;

In re LETTS, Minors.

No. 338619
Ingham Circuit Court
Family Division
LC Nos. 15-001271-NA;
          15-001272-NA

Before: STEPHENS, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

In Docket No. 337432, respondent-mother appeals the trial court's order terminating her parental rights to her two minor children under MCL 712A.19b(3)(c)(*i*), (g), and (j). In Docket No. 338755, respondent-father appeals the trial court's order terminating his parental rights to the same minor children under MCL 712A.19b(3)(c)(*i*), (g), and (j). In Docket No. 338619, respondent-father appeals a separate order terminating his parental rights to two additional minor children under MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

## I. FACTS

The children were removed from respondent-mother's home in October 2015, after she ingested heroin, overdosed, and required hospitalization. At that time, respondent-father was in federal prison for violating parole by testing positive for cocaine. Both respondents entered pleas to allow the trial court to exercise jurisdiction over the children. The trial court placed the children with the Department of Health and Human Services (DHHS) for care and supervision.

Respondent-mother initially did well with her service plan. However, after respondent-father returned to the home in May 2016, respondent-mother suffered a relapse in June 2016. Subsequently, respondent-mother and respondent-father both consistently tested positive for

illegal substances until October 2016. The trial court, therefore, ordered DHHS to file a petition to terminate respondents' parental rights, which DHHS did in November 2016.

Following respondent-mother's termination hearing, the trial court found that substance abuse was the condition that led to her adjudication. Although respondent-mother's progress was initially impressive, she relapsed on heroin in June 2016. Thereafter, she tested positive multiple times for THC, cocaine, and heroin, and missed 21 screens between June 2016 and the filing of the petition. The trial court found that respondent-mother had not resolved her substance abuse issues, and that addiction remained a barrier to reunification. In addition, respondent-mother's home was in foreclosure and she had trouble with emotional stability, including dependency traits regarding respondent-father. Further, respondent-mother's choices showed that she was not benefitting from therapy.

The trial court found that clear and convincing evidence supported the termination of respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*) on the basis of respondent-mother's continuing substance abuse, which was unlikely to be rectified within a reasonable time considering the children's young ages. It also found that there was clear and convincing evidence to terminate respondent-mother's parental rights under MCL 712A.19b(3)(g) and (j), because her failure to participate in and benefit from the service plan was evidence that she could not provide the children with proper care and custody or keep them safe. The trial court cited respondent-mother's difficulties with housing and emotional stability as additional support for terminating her parental rights under MCL 712A.19b(3)(j). The trial court also found that termination of respondent-mother's parental rights was in the children's best interests.

Following respondent-father's termination hearing, the trial court found that respondent-father pled to being incarcerated and was unable to provide proper care for the children. Because substance abuse was identified as an additional issue for respondent-father early in the case, he was provided with substance-abuse services. Respondent-father was on methadone treatment, but he continued to test positive for heroin, cocaine, and alcohol and he repeatedly failed to appear for substance abuse testing. The trial court found that while respondent-father testified that he was not using controlled substances, his missed tests made the court believe that he was "not showing because [he is] using." The trial court found that respondent-father did not benefit from services because he had not maintained any consistent period of sobriety. Although respondent-father made progress regarding employment, he had not maintained stable housing since April 2017. Additionally, respondent-father exhibited anger and threats toward DHHS, and engaged in domestic violence with respondent-mother.

The trial court found that MCL 712A.19b(3)(c)(*i*) had been proven by clear and convincing evidence because although respondent-father had been released from prison for nearly a year, he was still unable to provide an appropriate home or proper care and custody for the children, who had been in care for a year and a half. The court found that MCL 712A.19b(3)(g) and (j) had been proven by clear and convincing evidence because respondent-father failed to participate in and benefit from his service plan. Respondent-father's substance abuse, housing, emotional instability, and domestic violence with respondent-mother further indicated that he was unable to provide proper care and custody, and that the children would be harmed if returned to his care.

Considering the children's best interests, the trial court found that respondent-father and the children were bonded and that respondent-father had good practical parenting skills. However, it found that "his overall lack of compliance and inability to recognize how his behaviors impact the children concerning substance abuse, his extreme anger issues, his refusal to cooperate with DHHS, his relationship with the mother, his history of domestic violence and current domestic violence absolutely impacts his parenting ability . . . in a very negative way[.]" The children had a high need for permanence, finality, and stability, but respondent-father did not have an appropriate place to live, and the children's foster home was providing for their needs. After considering the children's placements, the trial court found that it was in the best interests of all four children to terminate respondent-father's parental rights.

## II. REASONABLE EFFORTS

In Docket No. 337432, respondent-mother raises two distinct arguments on appeal. First, she asserts that she was not given enough time to benefit from services. Second, she asserts that DHHS failed to engage in reasonable efforts at reunification because it did not provide her and respondent-father with marriage counseling immediately on his return to the home. We conclude that both arguments lack merit.[1]

First, termination was not premature. Parents must be given "time to make changes and the opportunity to take advantage of a variety of services . . . ." See *In re Powers*, 244 Mich App 111, 119; 624 NW2d 472 (2000). However, children should not have to wait for long periods in foster care for "the mere possibility of a radical change in [a parent's] life." *In re Williams*, 286 Mich App 253, 273; 779 NW2d 286 (2009).

Respondent-mother initially made progress by participating in substance abuse treatment, obtaining employment, and consistently attending drug testing. However, shortly after respondent-father returned to the home, respondent-mother ceased her employment. She also relapsed into substance abuse, and missed substance abuse treatments and drug screens. While respondent-mother denied using heroin or cocaine after her release from in-patient treatment, the caseworker testified that respondent-mother tested positive for heroin and cocaine in February 2017. This conflicting testimony created a question of credibility for the trial court to resolve. See *In re Miller*, 433 Mich 331, 337-338; 445 NW2d 161 (1989). Additionally, respondent-mother's relationship with respondent-father was unstable and her home was in foreclosure.

---

[1] Generally, this Court reviews for clear error whether a trial court engaged in reasonable efforts to reunify a child with his or her parent. *In re Mason*, 486 Mich 142, 152, 166; 782 NW2d 747 (2010). A finding is clearly erroneous if, after reviewing the entire record, this Court is definitely and firmly convinced that the trial court made a mistake. *Id*. However, this Court reviews unpreserved issues for plain error affecting a parent's substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). An error is plain if it is clear or obvious, and it affects the parent's substantial rights if it would have altered the outcome of the proceeding. *Id*. at 9.

Because respondent-mother did not demonstrate any progress in the eight months preceding her termination hearing, the trial court did not clearly err by finding that it was not likely that respondent-mother would demonstrate progress within a reasonable time. The trial court did not prematurely terminate respondent-mother's parental rights because respondent-mother was given time and the opportunity to benefit from services.

Second, we reject respondent-mother's argument that DHHS failed to provide her with reasonable services because it did not provide her with marriage counseling as soon as respondent-father returned to the home. In the present case, the need to provide respondent-mother with immediate marriage counseling did not become apparent until after respondent-father returned home.[2]

Respondent-father returned to the home on May 5, 2016. On June 9, 2016, respondent-father's psychological evaluator recommended marital therapy because respondent-father and respondent-mother "seem to have a pathological relationship[.]" In August 2016, the caseworker indicated that respondent-mother and respondent-father were both engaged in individual therapy. When asked what additional services would assist respondent-mother in her recovery in July 2016, she did not request marital counseling—she requested a peer recovery coach, which was promptly provided. DHHS's statutory duties to update a parent's service plan and provide the parent with necessary and relevant reunification services continue throughout the case. See *In re Mason*, 486 Mich at 156. The purpose of a case service plan is to facilitate returning children to their parents. *Id*. Accordingly, at each review hearing, the trial court should modify the case service plan to include any additional services that appear necessary to rectify the conditions that brought the child into care. *Id*.

Therefore, we conclude that failure to order marriage counseling immediately when respondent-father was returned to the home was not plain error because the need for marriage counseling did not become apparent until after that time.

In sum, we are not definitely and firmly convinced that the trial court made a mistake when it found that DHHS engaged in reasonable efforts to reunify respondent-mother with her children.

### III. RESPONDENT-FATHER'S STATUTORY GROUNDS

In Docket Nos. 338755 and 338619, respondent-father argues that the trial court erred by terminating his parental rights because he benefitted from services and was continuing to improve. Respondent-father's argument lacks merit because the record demonstrates that

---

[2] This Court has stated that to preserve a reasonable-efforts issue, a parent must object to a service plan when it is adopted or shortly thereafter. *In re Terry*, 240 Mich App 14, 26; 610 NW2d 563 (2000). Respondent-mother did not raise the issue of marriage counseling until the termination hearing. Therefore, we conclude that this issue is unpreserved.

respondent-father was unable to provide the children with proper care, custody, and a safe and stable home.[3]

The trial court terminated respondents' parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j) which permit termination under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial disposition order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> \* \* \*

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> \* \* \*

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

A trial court may consider the parent's mental health and substance abuse conditions when determining whether it is reasonably likely that the child will be harmed if returned to the parent's home. See *In re AH*, 245 Mich App 77, 87; 627 NW2d 33 (2001). Additionally, a parent's failure to comply with his or her service plan is evidence that the parent will not be able to provide proper care and custody, and that the child may be harmed if returned to the parent's home. *In re White*, 303 Mich App 701, 710-711; 846 NW2d 61 (2014).

Respondent-father contends that the trial court improperly held his methadone and marijuana use against him when he had prescriptions for those substances, and because they did not interfere with his parenting. Respondent-father's argument mischaracterizes the record. To the extent that the trial court referred to respondent-father's methadone treatment, it was to note that respondent-father was still using illegal substances despite being on a medically-assisted treatment plan. The trial court did not find that respondent-father's methadone treatment prevented him from parenting his children. Additionally, to the extent that the trial court referred

---

[3] This Court reviews for clear error the trial court's factual findings and ultimate determinations regarding statutory grounds for termination. *In re Mason*, 486 Mich at 152.

to respondent-father's marijuana use, it was to note that respondent-father had tested positive for marijuana early in the case and had not mentioned his chronic pain to his caseworker before obtaining a medical marijuana card in the Fall of 2016. The trial court also found that respondent-father continued to test positive for heroin, cocaine, and alcohol, and that he consistently failed to appear for testing. The record does not establish that the trial court held respondent-father's medical methadone or marijuana use against him.

Further, the evidence supports the trial court's findings that respondent-father did not have an appropriate home and that his substance abuse and emotional stability indicated that he could not provide the children with proper care and custody. Videos were played in which respondent-father appeared intoxicated, admitted to "selling dope," and admitted to bruising respondent-mother. Respondent-father had a history of anger and threatening behavior toward DHHS workers, which continued despite individual counseling. Respondent-father admitted that he had stayed in a variety of locations in the prior two months, including motels and friends' couches. A voluminous record of evidence documented respondent-father's continued substance abuse. Despite respondent-father's statements that he had not used substances since his inpatient treatment, respondent-father continued missing substance abuse tests, which rendered DHHS unable to verify his sobriety.

Accordingly, we are not definitely and firmly convinced that the trial court made a mistake when it found that the evidence supported terminating respondent-father's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j).

## IV. BEST INTERESTS

In Docket Nos. 338755 and 338619, respondent-father argues that the trial court erred by terminating his parental rights when he was strongly bonded with the children and had good practical parenting skills. Respondent-father's argument lacks merit because the trial court considered a variety of factors when determining the children's best interests. While those two factors weighed against termination, the remainder of the factors considered by the court weighed in favor of termination.

The trial court should weigh all the evidence available to determine the children's best interests. *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). To determine whether termination of a parent's parental rights is in a child's best interests, the court should consider a wide variety of factors that may include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). The trial court may also consider "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714 (citations omitted).

Caseworkers agreed that respondent-father and the children were strongly bonded, that he had good parenting skills, and was consistently engaged in parenting times. In line with this evidence, the trial court found that respondent-father and the children were bonded and that respondent-father had good practical parenting skills. However, these are only two of many

factors the court considered when determining the children's best interests. The court also determined that other factors—such as respondent-father's lack of compliance, anger issues, relationship with respondent-mother, domestic violence, and lack of permanent and stable housing—weighed in favor of termination, and the record evidence supports the trial court's findings. As previously discussed, respondent-father did not comply with or benefit from the substance abuse portion of his service plan. Additionally, DHHS caseworker Barbara Poma testified that respondent-mother and respondent-father had a history of domestic violence, and that respondent-father exhibited questionable emotional stability because of his persistent anger issues. Another caseworker testified that because the children were under the age of 10, they needed stability and a permanent home, and there was evidence that the older children were suffering from an extended period in foster care, displaying anger and trust issues, and required therapy.

Respondent-father is incorrect that a trial court may not compare a foster home with a parent's home when considering a child's best interests. Although a court may not consider the advantage of a foster home in determining whether there is a statutory ground to terminate parental rights, after a statutory ground is established, the court may consider the advantages of a foster home placement to determine the child's best interests. *In re Foster*, 285 Mich App 630, 635; 776 NW2d 415 (2009). In this case, the trial court compared the children's foster home placement to respondent-father's home only in the best-interest phase of its decision. The trial court did not err by doing so.

Finally, respondent-father argues that the trial court erred by ruling that the older children's placement with their relative did not weigh against terminating his parental rights. We conclude that the trial court did not err. While placement with a relative generally weighs against termination, the basis for that general rule does not apply in this case because the relative with whom the children were placed was not one of respondent-father's relatives.

The trial court's factual findings concerning a child's best interests are factually inadequate if the child is placed with a relative but the trial court does not consider that factor when determining the child's best interests. *In re Mays*, 490 Mich 993, 994; 807 NW2d 307 (2012); *In re Mason*, 486 Mich at 163-164. In *In re Mason*, 486 Mich at 164, our Supreme Court stated that a child's placement with relatives weighs against termination of parental rights. In that case, however, children had been placed with the respondent parent's family, "presumably the very people with whom respondent would have voluntarily placed them had [DHHS] not already taken custody of them . . . ." *Id*. at 163-164. We also reiterated that "[g]enerally, a child's placement with relatives weighs against termination." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015) (quotation marks and citation omitted).

In this case, the trial court found that the older children were placed with their maternal grandmother, who had no relationship with respondent-father and who wished to adopt them.[4] The trial court found that it would not be appropriate to deprive the children of a permanent

---

[4] The mother of respondent-father's two older children voluntarily released her parental rights to those children.

home even though they were placed with one of their relatives.[5] The relative with whom the older children were placed was not the relative with whom respondent-father would have voluntarily placed them. The trial court did not err when it determined that the children's relative placement did not weigh against termination in this case.

In sum, we are not definitely and firmly convinced that the trial court made a mistake when it found that terminating respondent-father's parental rights was in the children's best interests.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola

---

[5] The two younger children were not placed with a relative.